**Homer HOGAN, Plaintiff,**

v.

**PETITPREN, INC. EMPLOYEES PROFIT SHARING AND SALARY REDUCTION PLAN and Dean Petitpren, Plan Administrator, Jointly and Severally, Defendants.**

No. 99–76118.

United States District Court,
E.D. Michigan,
Southern Division.

April 6, 2000.

Jamil Akhtar, Akhtar & Sucher, Troy, MI, for Plaintiff.

Robert M. Vercruysse, William E. Altman, Vercruysse Metz & Murray, Bingham Farms, for Defendants.

### OPINION AND ORDER

FEIKENS, District Judge.

## I. Introduction

In April 1999, plaintiff Homer Hogan (Hogan) made a formal request through his attorney to the defendants, Petitpren, Inc. (Petitpren) and Dean Petitpren, his former employers, for specific ERISA documents. These documents were requested in order to determine if Hogan had additional benefits due to him under Petitpren's pension plan. The defendants did not furnish the requested information.

Hogan instituted this action in December 1999 pursuant to ERISA § 1132(a)(1)(A), for failure to provide the documents pursuant to ERISA § 104(b)(4) and for failure to render benefits due under his pension plan.

Before me now are two motions brought by the defendants. The first is a motion for summary judgment on both counts of Hogan's complaint. The second is a motion for leave to file an amended answer with a counter-claim.

## II. Background

Hogan worked as an at will employee for Petitpren from 1985 until 1993. During this time, he participated in the Petitpren, Inc. Employee's Profit Sharing and Salary Reduction Plan (the Plan), a pension plan governed by ERISA. In March 1993, Hogan was terminated. He filed suit in the Macomb County Circuit Court, alleging age discrimination in violation of the Michigan Elliott–Larsen Civil Rights Act. Hogan and Petitpren settled the law suit in 1995. In return for $66,000.00, Hogan signed a resignation effective March 29, 1993, and a release of all claims concerning his employment and termination at Petitpren. The release stated in relevant part:

> "Homer Hogan... for himself, his heirs and personal representatives, fully and forever releases, acquits and discharges PETIPREN, INC. and RANDY THOMPSON, their agents, servants, employees, representatives, subsidiaries, divisions, affiliated companies and successors, from any and all claims, demands, actions and causes of action of every kind, nature or description which Homer Hogan may have had, may now have, or may hereafter have... arising out of or in connection with Homer Hogan's employment or termination of employment."

(Deft.Ex. D).

In 1995 the Internal Revenue Service changed its policy regarding emotional distress damages. Such damages are now taxable. To accommodate this change,

Hogan's settlement amount was reported on a W-2 form. Hogan paid the applicable state and federal income taxes, but wondered if the sum was eligible for consideration under Petitpren's pension plan because it was reported as wages.

In October 1997, Hogan sent a letter to Dean Holefca (Holefca), the Contract Administrator for the Plan, asking if he was entitled to a retirement contribution based on the settlement amount reported on the W-2 form. After consulting Petitpren's attorney, Holefca responded in a letter that Hogan was not entitled to a retirement contribution because the funds paid to Hogan were not wages.

During this time Hogan was also concerned with the state of his existing vested benefits under the Plan[1]. According to Hogan's affidavit, on two occasions during 1997 and 1998, during discussions about his vested benefits, Holefca told Hogan that the wages he had received from the settlement should also be considered wages for the purpose of the Plan.

On April 1, 1999, Hogan's attorney[2] sent Dean Petitpren, the Plan Administrator,[3] a letter requesting that Hogan be provided with certain ERISA documents. This letter was not signed by Hogan, but it stated "we are requesting" before the request. The relevant information requested was:

1) A copy of the Plan;
2) A copy of the Plan Summary;
3) A copy of the Form 5500s filed for the past five years relating to the Plan;
4) The name of the Plan Administrator;
5) A statement of Hogan's benefits now maintained in his account under the provisions of the Plan; and

6) The reasons why a contribution was not made during 1995 or 1996 based on the settlement wages.

The attorney for Petitpren[4] responded to Hogan's request with a letter on April 13, 1999. The letter did not provide Hogan with any of the Plan information he requested. This action was filed December 23, 1999. On January 3, 2000, the defendants sent to Hogan items 1 through 3 and 5 of his April 1999 request.

The action Hogan filed has two counts. The first alleges a violation of ERISA, in the failure to provide the documents within a reasonable time of the request. The second count alleges a further violation of ERISA in that the defendants refused to give Hogan a pension contribution based on the 1995 settlement amount. Defendants answered the complaint, then motioned for summary judgment on both counts.

### III. Discussion

#### A. Pension Plan Contribution

■ Because Hogan is now in possession of the relevant documents, both parties agree that the main issue left for me to decide is whether Hogan is entitled to a pension contribution. Because of the release which is in effect between Hogan and Petitpren, I find that Hogan is not entitled to an additional pension contribution.

Hogan relies on the test proffered in *Adams v. Philip Morris, Inc.* 67 F.3d 580 (6th Cir.1995) by the United States Court of Appeals for the Sixth Circuit to determine the validity of a waiver. Under this test, the court is to evaluate: (1) plaintiff's experience, background, and education; (2)

---

**1.** It is undisputed by the defendants that Hogan has a sizable pension through their Plan, and that he has not waived any rights regarding these vested benefits.

**2.** Hogan's attorney has remained the same since the time of the settlement.

**3.** There is some confusion as to who the Plan Administrator is. Hogan believed Dean Petit-

pren was the Administrator because Petitpren testified he was in a deposition from the original state court case. The defendants claim now he is not the Administrator.

**4.** The attorney for Petitpren has also remained the same since the time of the 1995 settlement.

the amount of time plaintiff had to consider the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; and (5) the totality of the circumstances. *Id.*, at 583 (citations omitted).

Hogan asserts that the waiver is invalid only as it pertains to pension benefits. He contends it does not meet the third factor of the *Adams* test because it does not specifically mention waiving his pension benefits.[5]

I find that the language of the release is broad enough to encompass the present claim. The release states Petitpren is released from "any and all claims ... which Homer Hogan may have had, may now have, or may hereafter have...". Hogan's attorney, Jamil Akhtar (Akhtar) was present during the entire negotiating period of the 1995 settlement. In oral argument Akhtar assured me that at the time of the settlement he did not harbor any thought that the release was not all encompassing. Hogan is essentially asking for an additional payment because of the settlement, intimating that the IRS policy change vitiates the release. If I were to agree with him that he can now raise a claim against the settlement amount, I would be nullifying the release. I find the release is clear that it encompasses all claims relating to the employment and termination, and settlement, of Hogan's original claims against the company.[6]

### B. Failure to Provide Documents

■ Because Hogan is now in possession of the documents he desired, I am not concerned with this count of the complaint. Even if I were, though, the Sixth Circuit has held that under § 104(b)(4) of ERISA, a plan administrator "is not obliged to disclose any documents to [plaintiff's] attorney without written authorization from plaintiffs or their beneficiaries." *Bartling*

---

5. I note that ERISA, unlike several federal civil rights statutes, does not require that the release include ERISA by name in the claims released.

*v. Fruehauf Corporation,* 29 F.3d 1062 (6th Cir.1994). I doubt that a letter unsigned by Hogan from Hogan's attorney constitutes valid written authorization. Thus because I am bound by the Sixth Circuit's ruling, it is unlikely that I could grant Hogan the statutory penalties even if I wished to do so.

### C. Motion for Leave to File an Amended Answer

The motion for leave to file an amended answer is hereby dismissed as moot.

### IV. Conclusion

I conclude the release bars the claim for additional pension contributions, and that Hogan is not entitled to statutory penalties provided by ERISA. I therefore **GRANT** Petitpren's motion for summary judgment. The motion for leave to file an amended answer is hereby dismissed as moot.

IT IS SO ORDERED.

---

6. I do not hold, however, that Hogan would not have a claim if Petitpren had tried to inhibit his already existing vested benefits under the pension plan.